IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SETTLEMENT CAPITAL | § | |
| CORPORATION, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:07-CV-1609-O |
| | § | |
| ZULAY PAGAN, et. al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the following motions from the parties:

(1)    Plaintiff Settlement Capital Corporation, Inc.'s Motion for Partial Summary Judgment (Doc. # 132).

(2)    Plaintiff Settlement Capital Corporation, Inc.'s Motion for Leave to File Supplement Appendix to Evidence in Support of SCC's Motion for Partial Summary Judgment (Doc. # 210).

(3)    Plaintiff Settlement Capital Corporation, Inc.'s Objections to, and Motion to Strike Seneca and Route 28's Evidence In Support of Their Response to SCC's Motion for Partial Summary Judgment (Doc. # 181).

(4)    Defendant Seneca and Route 28's Amended Motion for Summary Judgment (Doc. # 147).

(5)    Plaintiff Settlement Capital Corporation, Inc.'s Motion for Leave to File Supplement Appendix to Evidence in Support of SCC's Opposition to Seneca and Route 28's Amended Motion for Summary Judgment (Doc. # 211).

(6)    Plaintiff Settlement Capital Corporation, Inc.'s Objections to, and Motion to Strike Seneca and Route 28's Evidence In Support of Their Amended Motion for Summary Judgment (Doc. # 172).

(7)    Plaintiff Settlement Capital Corporation, Inc.'s Motion for Leave to File Second Amended Complaint (Doc. # 143).

After considering these documents and the applicable authorities, the Court finds as

follows:

I.      **Factual and Procedural Background**

The following facts are undisputed by the parties after reviewing their respective pleadings, briefs, and evidence. In 1995 Zulay Pagan, her father, and Fireman's Fund Insurance Company ("FFIC") entered into a settlement agreement ("the 1995 agreement") by which Pagan would receive from FFIC a number of periodic lump-sum payments over several years.[1] One of these payments was in the amount of $250,000 due and payable on August 1, 2009 ("the 2009 payment").[2] The 1995 agreement included an anti-assignment provision stating as follows: "nor shall ZULAY PAGAN have the power to sell or mortgage or encumber the Periodic Payments, or any part thereof, by assignment or otherwise."[3]

In March 2002, Pagan submitted an application to plaintiff SCC to sell her rights to receive the 2009 payment.[4] The following month Pagan and SCC executed an agreement ("the SCC purchase agreement") providing that in exchange for an immediate payment of $75,211 Pagan would sell her right to receive the 2009 payment to SCC.[5] Included in the SCC purchase agreement was a waiver of the anti-assignment provision in the 1995 Agreement stating as follows:

> Section 6.1. <u>Assignability.</u> To the extent that any restrictions on the assignability of the Periodic Payments were included in the Settlement Agreement or the Annuity for the benefit of the Seller, Seller acknowledges his intent to waive said benefits. . . Seller hereby

---

[1] *See* Doc. # 134 at 95-103.

[2] *See* id. at 97.

[3] *See* id.

[4] *See* id. at 203-25.

[5] *See* id.

2

WAIVES AND RELEASES all rights and benefits of Seller in, to, or under, all such restrictions on assignability, if any.[6]

Section 4.18. <u>Covenant Not to Sue.</u> Seller does hereby irrevocably and expressly covenant and agree that Seller shall not at anytime sue or institute or pursue any legal action or demand . . . against Purchaser . . . any actual or threatened claim that Seller lacked the power to sell or transfer the Periodic Payments or that all or any part of the Periodic Payments were non-transferable, non-assignable, or similarly restricted or that otherwise depends for its basis . . . on any language in the Settlement Agreement, the Annuity, or any related writing that similarly restricts the transferability of the Periodic Payments or the proceeds thereof[.][7]

When the SCC purchase agreement was executed Pagan was a resident of New York.[8] Furthermore, it is undisputed that the SCC purchase agreement was executed before the New York Legislature enacted its Structured Settlement Protection Act ("SSPA") which became effective on July 1, 2002.[9] Since the SCC purchase agreement was pre-SSPA, SCC filed a UCC statement in New York, showing that SCC had a security interest in various periodic payments under the annuity.[10]

The current dispute between SCC and the various defendants arose as a result of a chain of events that began in February 2007. That month Pagan executed an agreement ("the Seneca agreement") with defendant Seneca One LLC ("Seneca"). Pursuant to the Seneca agreement Pagan transferred her right to receive $100,000 of the $250,000 proceeds of the 2009 payment, that she

---

[6] *See* Id. at 216.

[7] *See* Id. at 214.

[8] *See* Doc. # 133 at 2; Doc. # 164 at 6.

[9] *See* Doc. # 164 at 6-7.

[10] *See* Doc. # 134 at 105, 107.

3

allegedly had already sold to SCC, in exchange for an immediate payment of $56,800.82.[11] Under the Seneca Agreement Pagan was also supposed to keep the remaining $150,000 of the 2009 payment.[12] In March 2007, Seneca executed an assignment agreement with defendant Route 28 Receivables LLC ("Route 28"), that purported to transfer Seneca's rights under the Seneca Agreement to Route 28.[13] At the time Pagan lived in Florida, which had enacted SSPA legislation.[14] As per Florida SSPA law, Seneca sought Florida state Court approval of the Seneca Agreement, which was granted in an order dated March 23, 2007 ("the March 2007 Order").[15] The Florida Court that issued the March 2007 Order does not appear to have had any notice of SCC and Pagan's 2002 agreement with regard to the 2009 payment.[16] It is intensely disputed by the parties whether or not Seneca and Route 28 had any actual or constructive notice of the SCC purchase agreement when they executed the Seneca agreement with Pagan. The March 2007 Order directed FFIC to transmit the entire 2009 payment to Seneca, which would in turn keep $100,000 and transfer the remaining $150,000 to Pagan.[17]

    In March 2007, Pagan entered into another agreement ("the Stone Street Agreement") with Stone Street Capital, LLC ("Stone Street") to sell the rights to another payment in the amount of

─────────────────────

[11] *See* id. at 113-18.

[12] *See* id. at 143-46.

[13] *See* id. at 254.

[14] *See* id. at 120-41.

[15] *See* id.

[16] *See* id. at 143-46.

[17] *See* id.

$175,000 due and payable on August 1, 2014 ("the 2014 payment").[18] Stone Street initiated proceedings in Florida state court to gain approval of the Stone Street agreement.[19] In April 2007, a Florida court signed an order ("the April 2007 Order") approving the Stone Street agreement.[20] Included in the April 2007 Order was an acknowledgment of SCC's pre-SSPA transaction with regard to the 2009 payment.[21] The order expressly stated that it approved only the Stone Street agreement.[22] The acknowledgment was included in the April 2007 Order only because SCC requested, as a condition of releasing its security interest against the 2014 payment in favor of Stone Street, that its transaction with Pagan regarding the 2009 payment be recognized in the order.[23] The April 2007 Order directed FFIC to transmit the 2014 payment to Stone Street.[24]

In a letter dated August 30, 2007, FFIC notified Stone Street, Seneca, and SCC that it had received the conflicting March 2007 and April 2007 orders. The letter stated that FFIC could not split the 2009 payment and asked Stone Street and Seneca how they intended to rectify the problem.[25] The orders conflicted because the March 2007 Order directed FFIC to transmit the entire 2009 payment to Seneca whereas the April 2007 Order noted that SCC was due to receive the entire

---

[18]*See* id. at 148-54.

[19] *See* id.

[20] *See* id.

[21] *See* id. at 150-51.

[22] *See* id. at 152.

[23]*See* Doc. # 133 at 3; Doc. # 134 at 150-51.

[24]*See* Doc. # 134 at 148-54.

[25] *See* id. at 156.

2009 payment.[26] SCC responded by writing FFIC to request that the entire 2009 payment be remitted to SCC when it became due.[27] Seneca responded by writing Stone Street demanding that it amend the April 2007 Order to require FFIC to remit the entire 2009 payment to Seneca.[28]

SCC initiated the instant lawsuit on September 19, 2007 naming Pagan, Seneca, Route 28, and FFIC as defendants. SCC sought declaratory relief against Pagan, Seneca, Route 28, and FFIC. SCC also asserted claims for theft, conspiracy, conversion, and violations of Chapter 12 of the Texas Civil Practice and Remedies Code against Seneca. Seneca responded by filing counterclaims asserting slander of title and seeking declaratory relief in addition to raising several affirmative defenses. Pagan also raised various affirmative defenses and counterclaimed for certification of a class action on behalf of all persons who assigned structured settlement payments to SCC allegedly in violation of an anti-assignment clause in their contract. However, around September 2008 Pagan ceased communication with her attorneys and after unsuccessful efforts to locate her, Pagan's attorneys were granted leave to withdrew as counsel of record. Further, because Pagan ceased her participation in this matter, disregarded Court orders, and abandoned this litigation, the Court dismissed Pagan's class action counterclaim without prejudice.[29] To date Pagan has made no further effort to participate in this litigation. FFIC counterclaimed with an interpleader claim and later moved for summary judgment on that claim. In March 2009, this Court granted FFIC's motion for

---

[26] *See* id. at 143-46, 148-54.

[27] Id. at 158-59.

[28] Id. at 161-62.

[29]*See* Doc. # 166.

summary judgment and dismissed them from the lawsuit on the condition that when the 2009 payment becomes payable on August 1, 2009 that it be paid into the registry of the Court.

## II.      Summary Judgment Standard

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[30] "[T]he substantive law will identify which facts are material."[31] A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.[32] When ruling on a motion for summary judgment, the Court must view all inferences drawn from the factual record in the light most favorable to the nonmoving party.[33] Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.[34] As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied.[35]

---

[30]Fed. R. Civ. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986); Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).

[31]Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[32] Id.

[33]Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Ragas, 136 F.3d at 458.

[34]Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Anderson, 477 U.S. at 254-55.

[35]Anderson, 477 U.S. at 250.

Once the movant has made this initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.[36] Conclusory allegations are not competent summary judgment evidence, and are insufficient to defeat a motion for summary judgment.[37] Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.[38] The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports her claim.[39] Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.[40] If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.[41]

Summary judgment may not be awarded by default merely because the nonmoving party has failed to respond.[42] A motion for summary judgment cannot be granted simply because there is no

---

[36]Matsushita, 475 U.S. at 586.

[37]Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996).

[38]See Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871 (1994).

[39]Ragas, 136 F.3d at 458.

[40]Id.; see also Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir.), cert. denied, 506 U.S. 832 (1992).

[41]Celotex, 477 U.S. at 322-23.

[42] See Hibernia Nat'l Bank v. Administration Cent. Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985); see also Ford-Evans v. Smith, 206 Fed.Appx. 332, 334 (5th Cir. 2006).

opposition, even if failure to oppose violated a local rule.[43]   The movant has the burden of

establishing the absence of a genuine issue of material fact and, unless he has done so, the court may

not grant the motion, regardless of whether any response was filed.[44]   In making its determination

on the motion, the court looks at the full record including the pleadings, depositions, answers to

interrogatories, admissions, and affidavits.[45]

## III.   Plaintiff SCC's Motion for Partial Summary Judgment.

### A.   Declaratory Relief As to Pagan, Seneca, and Route 28.

Plaintiff SCC seeks a declaration that its purchase agreement with Pagan is valid and

enforceable. It asserts that the agreement is valid because (a) no SSPA applied to the SCC purchase

agreement so SCC was not required to and could not get court approval of its transaction, (b) the

anti-assignment provision in the 1995 agreement has no effect on the validity of the purchase

agreement because Pagan waived and is estopped from invoking the anti-assignment provision and

FFIC has waived enforcement of the anti-assignment provision, (c) and that the SCC purchase

agreement is not contrary to public policy.

On the other hand, defendants Seneca and Route 28 counter that the SCC purchase

agreement is void and unenforceable. They argue that the agreement is void because (a) it was a pre-

SSPA transaction so there was no court approval of the SCC purchase agreement, (b) the anti-

---

[43] Simco Enterprises, Ltd. v. James River Ins. Co., 566 F.Supp.2d 555, 560 (E.D. Tex. 2008).

[44] Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n.3 (5th Cir. 1995) (quoting Hibernia Nat'l Bank, 776 F.2d at 1279); see also Owens v. Town of Delhi, 469 F.Supp.2d 403, 405 (W.D. La. 2007); Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist., 404 F.Supp.2d 942, 947 (S.D. Tex. 2005).

[45] Fed. R. Civ. P. 56(c); Williams v. Adams, 836 F.2d 958, 961 (5th Cir. 1988).

assignment provision contained in the 1995 agreement precluded Pagan from assigning the 2009 payment to SCC, (c) there is no competent summary judgment evidence to suggest that FFIC has taken action to waive the anti-assignment provision, and (d) the SCC purchase agreement was contrary to public policy at the time it was executed.

SSPA legislation has no effect on the validity of the SCC purchase agreement. The parties agree that the SCC purchase agreement was executed several months prior to the enactment and effective date of the New York SSPA and as such the SSPA has no effect whatsoever on the validity or enforceability of the SCC purchase agreement.[46] Moreover, the parties also agree that the April 2007 Order that acknowledged the SCC purchase agreement was neither intended nor could it be construed as any form of court approval of that pre-SSPA transaction. Therefore, the Court finds that neither the New York SSPA nor the Florida SSPA have any effect on the validity or enforceability of the SCC purchase agreement since it was a pre-SSPA transaction.

The crux of this case revolves around what effect the anti-assignment provision in the 1995 settlement agreement has on SCC's purchase agreement. If the anti-assignment provision in Pagan's original settlement agreement denies Pagan the ability to assign any of the periodic payments as the defendants claim the SCC purchase agreement is indeed void and unenforceable. If, however, the anti-assignment provision does not affect the SCC purchase agreement then Seneca, Route 28, and Pagan have raised no other arguments that would invalidate it. As the first purchaser of the 2009 payment SCC would have the right to receive it exclusive of Seneca, Route 28, and Pagan.

---

[46] Section 5-1708(e) of the New York SSPA states that "[n]othing contained in this title shall be construed to . . . imply that any transfer under a transfer agreement entered into prior to the effective date of this title is valid or invalid." N.Y. Gen. Oblig. § 5-1708(e) (Westlaw current through L.2009).

Seneca and Route 28 argue, in four parts, that the SCC purchase agreement is void because of the anti-assignment provision. First, they argue that when determining the effect of the anti-assignment provision it is actually the 1995 settlement agreement that is being interpreted and not the SCC purchase agreement. Second, they assert that since the settlement agreement includes a choice of law clause mandating that New York law apply when interpreting it, New York and not Texas law applies to determine the effect of the anti-assignment provision. Third, under New York law the language of the provision effectively prohibits Pagan from assigning any of her rights to receive the periodic payments. And finally, even if under New York law the obligor, FFIC in this case, has the power to waive such a provision FFIC has not done so.

Seneca and Route 28's arguments claiming that the SCC purchase agreement is void because of the anti-assignment provision fail as a matter of law. "[O]nly parties to a contract may sue to enforce the rights provided in the four corners of the agreement."[47] It is undisputed that neither Seneca nor Route 28 is a party to the 1995 settlement agreement between Pagan and FFIC. Therefore, the Court finds that neither Seneca nor Route 28 have standing to raise the anti-assignment provision to void the SCC purchase agreement.[48]

---

[47] Kona Tech. Corp.  v. S. Pac. Transp. Co., 225 F.3d 595, 602 (5th Cir. 2000); *see also* House v. Houston Waterworks Co., 88 Tex. 233, 238, 31 S.W. 179, (1895).

[48] Even in the event that standing was not an issue, Seneca and Route 28's argument that the anti-assignment provision denies Pagan the power to assign any of the payments absent a statutory scheme is undercut by their own conduct in purchasing a portion of the 2009 payment from Pagan. In footnote 4 of Doc. # 164, Seneca/Route 28 attempt to differentiate their assignment from SCC's by noting that it was approved under "a proper statutory scheme" implying that the anti-assignment provision in the 1995 agreement has no affect on their transaction but still voids the SCC transaction. However, section 5-1702(d) of the New York SSPA, for example, expressly notes that where applicable "any transfer of the periodic payments is prohibited by the terms of the structured settlement and may otherwise be prohibited or restricted under applicable law[.]" Thus, even when a transfer is approved under the SSPA, a

On the other hand, Pagan, who is a party to the 1995 settlement agreement, would have standing to assert the anti-assignment provision. However, Pagan has not filed any response to SCC's motion or presented any evidence of facts she believes to be disputed. SCC argues and presents evidence that Pagan waived enforcement of "any restrictions on the assignability of the Periodic Payments [that] were included in the Settlement Agreement" to the extent such a provision was included for her benefit. If Pagan's waiver in the SCC purchase agreement was valid and binding, as SCC asserts, Pagan has waived and is estopped from asserting the anti-assignment provision to void the SCC purchase agreement.

The issue is the effectiveness of Pagan's waiver of the anti-assignment provision. Pagan's waiver of the anti-assignment provision in the original settlement agreement is within the four corners of the SCC purchase agreement.[49] Neither SCC nor Pagan, the only parties with standing to contest the terms of the SCC purchase agreement, have argued that the law of any state other than Texas applies to interpret the terms of the purchase agreement.[50] Moreover, even if New York law applies to determine the effect of the anti-assignment provision itself,[51] FFIC, the party who under

---

party to the contract, for example FFIC, may still raise an anti-assignment provision and prevent an assignment. N.Y. Gen. Oblig. § 5-1702(d) (Westlaw current through L.2009).

[49] Notably while the SCC purchase agreement includes a forum-selection clause selecting Dallas County, Texas it does not appear to include a choice of law clause. *See* Doc. # 134 at 204-25.

[50] Application of Texas law to the purchase agreement is also appropriate because SCC is a corporation located in Texas, venue is proper in Dallas, Texas, and Pagan applied to SCC in Texas to sell her rights to the 2009 payment.

[51] 6 AM. JUR. 2D *Assignments* § 10 (2009 Westlaw) ("[W]hile the validity of an assignment is determined by looking to the law of the forum with the most significant relationship to the assignment itself, the assignability of the right or obligation being assigned is determined by looking to the law that would govern the underlying contract[.]")

New York law may choose to raise or waive the anti-assignment provision,[52] has effectively waived any objections it could raise regarding the transfer. As discussed *infra*, FFIC has agreed to deposit the proceeds of the 2009 payment into the registry of the Court when it comes due and allow the Court to determine who receives the proceeds. Therefore, when determining the effect of the waiver of the anti-assignment provision on the SCC purchase agreement Texas law will apply.

Texas courts allow the assignor to waive enforcement of an anti-assignment provision in a structured settlement agreement. "An anti-assignment clause can be waived and the laws governing the waiver of contractual rights apply."[53] Waiver of contractual rights can be established by showing that a party has engaged in conduct with an intent to relinquish a known right.[54] An express renunciation of a known right by a party can establish waiver.[55] A party may also be estopped from asserting an anti-assignment provision when they have waived enforcement of that provision. Estoppel can be invoked "where the conduct of one of the parties has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards

_____

[52] *See In re* 321 Henderson Receivables Origination, L.L.C., 2008 WL 540762, at *2 (N.Y. Sup. Ct. 2008) ("While a prohibition against assignments or transfers may be waived by the obligor . . . it may not be waived by the payee since the provision is not for his or her benefit.").

[53] Johnson v. Structured Asset Servs., LLC, 148 S.W.3d 711, 722 (Tex. App.—Dallas 2004, no pet.).

[54] Id.

[55] Id.

allowed to disavow their conduct."[56] This rule of estoppel is basically another way of saying that a party is bound by the terms of their contract unless it is void or set aside in some way.[57]

In the SCC purchase agreement Pagan effectively waived and is estopped from asserting the anti-assignment provision in the original settlement agreement. Again, it is undisputed that Pagan executed the SCC purchase agreement and that the agreement contained the above-quoted provisions expressly waiving any right Pagan may have to assert the anti-assignment provision in the settlement agreement.[58] It is also undisputed that Pagan received good and valuable consideration in exchange for relinquishing her rights to the 2009 payment.[59] Pagan has neither made a claim that her execution of the SCC purchase agreement was anything other than voluntary nor presented any evidence of facts that would indicate such. Therefore, Pagan expressly waived her right to assert the anti-assignment provision in the original settlement agreement by executing the SCC purchase agreement.[60] Moreover, since Pagan entered into the SCC purchase agreement assigning her rights to the 2009 payment to SCC and accepted and has retained valuable consideration for doing so, she is estopped from taking a position inconsistent with that assignment.[61]

The only other party with standing to raise the anti-assignment provision in the original settlement agreement is FFIC. FFIC has not done so. Per this Court's Order of March 30, 2009 FFIC

---

[56] Id. at 721.

[57] Id. at 722.

[58] Doc. # 67 at 2-3.

[59] Id. at 4.

[60] *See* Johnson, 148 S.W.3d at 724.

[61] *See* id.

14

has agreed to pay the proceeds of the 2009 payment into the registry of the Court and allow them to be distributed to the parties as determined by the Court.[62] FFIC has since been dismissed from these proceedings on the condition that the 2009 payment be deposited into the Court's registry.[63] Therefore, no parties to this lawsuit have effectively raised the anti-assignment provision in the original settlement agreement. The only other argument remaining as to the enforceability of the SCC purchase agreement is the claim by defendants Seneca and Route 28 that the purchase agreement is contrary to public policy.

Defendants Seneca and Route 28 also assert that the SCC purchase agreement is void as contrary to public policy because it is an "illegal contract[.]"[64] Defendants then cite to a New York case holding that recipients of structured settlement payments who later waived their anti-assignment clauses are nonetheless bound to the anti-assignment clause.[65] They then go on to cite another case stating that New York public policy disapproves of the enforcement of illegal contracts.[66] Seneca and Route 28 make no attempt to show how the SCC purchase agreement is "illegal" under New York law and moreover they ignore Texas law on the issue.[67] In Texas, the Dallas Court of Appeals after an exhaustive review of statutory and case law rejected a similar

---

[62] *See* Doc. # 223.

[63] Id.

[64] Doc. # 164 at 13.

[65] Id.

[66] Id.

[67] Also Seneca and Route 28 again do not have standing to attack the SCC purchase agreement asserting that it is against public policy since they are not parties to the SCC purchase agreement.

argument and stated that: "We agree with the majority of the courts that the assignment of structured settlement payments is not against public policy."[68] The SCC purchase agreement is not contrary to any public policy. Therefore, since the defendants have raised no other arguments that would have the effect of voiding the purchase agreement the Court finds that it is valid and enforceable.

Since the SCC purchase agreement is valid and enforceable the next issue is which purchaser of the 2009 payment, SCC or Seneca/Route 28/Pagan, is entitled to the proceeds. SCC argues that since it was the first purchaser of the 2009 payment it took title when the SCC agreement was executed. Further SCC argues that when Pagan subsequently sold a portion of the payment to Seneca/Route 28 she in fact conveyed nothing since she no longer had an interest in the 2009 payment. Seneca and Route 28 respond by again raising the anti-assignment clause in the original settlement agreement and asserting that the SCC purchase agreement conveyed nothing because it was void. Seneca and Route 28 also raise questions regarding the structure of the SCC purchase agreement.

Seneca and Route 28's arguments again run into the issue of standing. Seneca and Route 28 are not parties to either the original settlement agreement or the SCC purchase agreement and have no standing to raise or object to the terms of either contract.[69] Just as they may not raise the anti-assignment clause to void the SCC purchase agreement they do not have standing to contest the structure of the SCC agreement.

---

[68] Johnson, 148 S.W.3d at 731.

[69] *See* Kona Tech., 225 F.3d at 602.

An assignment may generally be defined as a transfer or setting over of property or some right or interest from one person to another.[70] After making a valid assignment the assignor loses all control over the chose and can do nothing to defeat the rights of the assignee.[71] Moreover, an assignee takes only such title to the subject of the assignment as existed in the assignor at the time of the assignment.[72]

The SCC purchase agreement was a valid assignment of Pagan's right to the 2009 payment. As a result, when Pagan subsequently sold a portion of the same 2009 payment to Seneca in 2007 Seneca acquired only such title to the 2009 payment as Pagan had when she executed the Seneca agreement. Therefore, since Pagan's rights to the 2009 payment were extinguished when she executed the SCC agreement in 2002, she in fact conveyed nothing to Seneca in the 2007 Seneca agreement. Thus, as the first purchaser/assignee of the 2009 payment the Court finds that SCC is entitled to the proceeds of the payment.

Neither Seneca, Route 28, nor Pagan have raised any facts or evidence to create a genuine issue of material fact with regard to which party is entitled to the proceeds of the 2009 payment. Therefore, SCC is entitled to receive the proceeds of the 2009 payment; Seneca, Route 28, and Pagan are not entitled to those proceeds. Summary judgment with regard to SCC's claims for declaratory relief against defendants Seneca, Route 28, and Pagan should be and are hereby **GRANTED.**

---

[70] Coffey v. Singer Asset Fin. Co., 223 S.W.3d 559, 560 (Tex. App.—Dallas 2007, no pet.).

[71] Id.

[72] Kirby Forest Indus., Inc. v. Dobs, 743 S.W.2d 348, 354 (Tex. App.—Beaumont 1987, writ denied).

### B.        Conversion - Seneca and Pagan

SCC also seeks summary judgment on the liability portion of its conversion claim. Under Texas law a party states a claim for conversion when the following elements are satisfied: "(1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property."[73]

SCC asserts that it has met all of the above elements and that there are no genuine issues of material fact. SCC's argument proceeds as follows: (1) SCC owned the 2009 payment; (2) the defendants assumed and exercised control over the payment in manner inconsistent with SCC's rights; (3) SCC demanded that the defendants return the payment; and (4) that the defendants refused SCC's demand to return the payment.

Defendants argue that summary judgment is inappropriate as a matter of law or alternatively that issues of material fact exist. Defendants Seneca and Route 28 (1) dispute whether the right to receive a future payment of money can be the target of a conversion claim; (2) that SCC was not the owner of the 2009 payment since the SCC agreement was void; and (3) that genuine issues of material fact exist as to whether defendants exercised dominion or control over the payment, whether SCC demanded return of the payment, and finally whether defendants refused the alleged demand.

The first element is the most easily disposed of on this claim. If the SCC purchase agreement is valid and enforceable, SCC owns or is entitled to the proceeds of the 2009 payment. Therefore,

---

[73] Burns v. Rochon, 190 S.W.3d 263, 268 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

18

as explained above, SCC is entitled to the proceeds of the 2009 payment.[74]

The second element is more problematic. SCC contends that defendants Seneca, Route 28, and Pagan unlawfully assumed and exercised control over the 2009 payment in a manner that was inconsistent with SCC's ownership of the payment. SCC argues that Seneca's execution of the Seneca agreement, Seneca's subsequent assignment of the Seneca agreement to Route 28, and other actions were unlawful and inconsistent with SCC's rights to the payment. SCC claims Pagan took unlawful actions inconsistent with SCC's ownership when she executed the Seneca agreement, was a party to a transfer and indemnification agreement between FFIC and Route 28, and when she participated in the proceedings leading up to the March 2007 Order. Lastly, SCC claims that Route 28 took unlawful actions inconsistent with SCC's ownership when it was a party to the assignment agreement from Seneca to itself and also as Seneca's principal throughout the transaction with Pagan. Defendants Seneca and Route 28 argue that the right to receive a future payment cannot be the subject of a conversion claim and thus they could not have not taken actions inconsistent with SCC's rights to the payment.

The primary issue with regard to the second element is whether a party can exercise control or domain over an intangible right to receive money in the future. If not, Seneca and Route 28 could not have converted any property belonging to SCC. While Texas case law varies on the types of situations where money can be the subject of a conversion claim, few cases address an intangible right to receive money in the future. As a general rule, an action for conversion of money will lie when the money can be identified as a specific chattel and there is an obligation to deliver that money or when funds have (1) been delivered for safekeeping, (2) were intended to be kept

---

[74] *See* discussion *supra* at 9-16.

segregated, (3) in substantially the same form in which they are to be received, and (4) are not subject to a title claim by the keeper.[75]

SCC has not brought any cases to the attention of the Court that are even remotely analogous to the facts of this case. SCC relies primarily on *Mitchell Energy*[76] for its argument that it's right to receive the 2009 payment can be the subject of a conversion claim. In *Mitchell Energy* the Fifth Circuit held that money one cotenant of a mineral interest owed his fellow cotenant could not be the subject of a conversion claim because the money at issue was not in the form of a specific chattel.[77] Rather the obligation to pay the plaintiff was an obligation to pay money generally, which is not subject to a claim for conversion.[78] SCC also relies on *In re TXNB Internal Case*[79] for its assertion that prior possession by an owner is not required for conversion. In *TXNB* the Fifth Circuit held that a party cannot be guilty of conversion of money subject to a lien when the defendant had no notice of the actual lien.[80] Defendants Seneca and Route 28 counter with *AIG Life Insurance Co. v. Federated Mutual Insurance Co.*, where the Dallas Court of Appeals held that prior to the issuance of a settlement check the defendants were not in possession of any identifiable property to which the plaintiff was entitled.[81]

---

[75] 15 Tex. Jur. 3d *Conversion* § 21 (2009 Westlaw).

[76] Mitchell Energy Corp. v. Samson Res. Co., 80 F.3d 976 (5th Cir. 1996).

[77] Id. at 984.

[78] Id.

[79] *In re* TXNB Internal Case, 483 F.3d 292 (5th Cir. 2007).

[80] Id. at 308.

[81] AIG Life Ins. Co. v. Federated Mut. Ins. Co., 200 S.W.3d 280, 286 (Tex. App.—Dallas 2006, pet. denied).

SCC cannot rely on *Mitchell Energy* or any of the line of cases treating money as a specific chattel for the simple reason that Seneca and Route 28 were not and are not holding any funds that they are obligated to return to SCC. In this case the parties against whom the conversion claims are asserted will not receive the 2009 payment. Currently FFIC is the only party holding funds to which any other party might be entitled, and no one will be entitled to those funds until August 1, 2009. For this same reason SCC cannot recover under the four-part test set out above because the defendants they have asserted the conversion claim against do not meet the first element: Seneca and Route 28 are not keeping any funds. None of the defendants, Seneca, Route 28, or Pagan, have breached an obligation to SCC to deliver a specific and identifiable sum of money.

While SCC does not address them in its brief, there is a line of Texas cases dealing with conversion of intangible rights. Texas recognizes conversion of intangibles when the underlying intangible right has been merged into a document and that document itself has been converted.[82] Texas law does not recognize conversion of intangible contract rights that have not been merged into a document.[83] Since under these cases the right itself must be merged into a document that is converted they do not apply to the facts of this case. Here the right to receive the 2009 payment has not been merged into any particular document that the defendants are accused of physically converting. Thus, SCC has failed to prove each element of its conversion cause of action as a matter of law and summary judgment in favor of SCC on this claim is inappropriate.

---

[82] Oxy USA, Inc. v. Sw. Energy Prod. Co., 161 S.W.3d 277, 284 (Tex. App.—Corpus Christi 2005, pet. denied).

[83] W.G. Pettigrew Distrib. Co. v. Borden, Inc., 976 F. Supp. 1043, 1057 (S.D. Tex. 1996).

Even if a conversion action would lie for the right to receive the 2009 payment, SCC's conversion claim would fail because SCC has failed to carry its burden with regard to the third and fourth elements of a conversion claim. In elements three and four the plaintiff must demand return of the converted property and the defendant must refuse the plaintiff's demand.[84] The undisputed facts indicate that after receiving a copy of FFIC's letter notifying Stone Street and Seneca that the March 2007 and April 2007 orders had conflicting information SCC sent a letter to FFIC requesting that FFIC remit the 2009 payment in full to SCC when it became due. Seneca, after receiving the same letter from FFIC, drafted a letter to Stone Street demanding that it amend the April 2007 order to reflect Seneca's alleged ownership of the 2009 payment. SCC copied Seneca on its letter to FFIC and in turn Seneca copied SCC on its letter to Stone Street. Neither the SCC letter to FFIC nor the Seneca letter to Stone Street were addressed or directed to Seneca or SCC respectively.

SCC has not directed the Court's attention to any case law suggesting that its letter to FFIC, on which Seneca was copied, is effective as a demand to Seneca for return of the 2009 payment. Thus, there is at the very least a genuine issue of material fact as to whether or not the third and fourth elements of SCC's conversion claim have been met. Therefore, even if SCC's claim for conversion did not fail with regard to the second element, SCC has also failed to carry its burden on the remaining elements and summary judgment in favor of SCC on it's conversion claim is inappropriate and is hereby **DENIED.**

### C.      Civil Theft Claim - Seneca and Pagan

SCC also asserts a civil theft claim against Seneca and Pagan and moves for summary judgment on the liability portion of that claim. Under chapter 134 of the Texas Civil Practice and

---

[84] *See* Burns, 190 S.W.3d at 268.

Remedies Code[85] a person can maintain a private cause of action for theft if they unlawfully appropriate property as described by section 31.03 of the Texas Penal Code[86].[87] Section 31.03 requires that (1) defendants unlawfully appropriate property with the intent to deprive the plaintiff of that property; and (2) the plaintiff is the owner of the property.[88] The Penal Code's definition of property includes all tangible and intangible personal property.[89] Appropriate is defined as bringing about a transfer or purported transfer of title or other non-possessory interest in property, whether to the actor or another, or to acquire or otherwise exercise control over property other than real property.[90] Appropriation is unlawful if it is done without the owner's effective consent.[91]

SCC argues that the defendants exercised control over the 2009 payment, brought about a purported transfer of title to the 2009 payment, and intended to deprive SCC of the 2009 payment. According to SCC, defendants exercised control over the payment when they executed the Seneca agreement, executed the assignment from Seneca to Route 28, and when they filed the petition resulting in the March 2007 order, among other actions. SCC also alleges that these same actions brought about a purported transfer of title to the 2009 payment. Lastly, SCC asserts that the defendants intended to deprive SCC of the payment and point to a statement in one of Pagan's

---

[85] Tex. Civ. Prac. & Rem. Code Ann. § 134 (Westlaw current through 2009 R.S.).

[86] Tex. Penal Code Ann. § 31.03 (Westlaw current through 2009 R.S.).

[87] Civ. Prac. & Rem. Code, § 134.

[88] Penal Code § 31.03 (a).

[89] Id. § 31.01(5)(B).

[90] Id. § 31.01(4)(A-B).

[91] Id. § 31.03(b).

pleadings where she allegedly discussed with Seneca that she was under contract with SCC. SCC also refers the Court to evidence that Seneca had in its files copies of SCC's UCC forms showing that SCC had a security interest in the structured settlement payments, which allegedly would have alerted Seneca to SCC's ownership of the 2009 payment before it executed the Seneca agreement.

Seneca argues first that SCC's theft claim must fail as a matter of law because the jurisdictional requirement of the Theft Liability Act is lacking. Secondly, the defendants argue that since no money has yet been received by any party no theft has occurred because defendants have not unlawfully appropriated any property. Seneca and Route 28 also argue that there is a bona fide dispute as to the ownership of the 2009 payment between SCC and Seneca/Route 28 and therefore no theft conviction can stand. Lastly, Seneca argues that there is no competent summary judgment evidence to establish, as a matter of law, that Seneca had the intent to deprive SCC of the payment even if SCC owned the 2009 payment.

Seneca and Route 28 argue that the jurisdictional requirement of the Theft Liability Act is lacking. They assert that section 1.04 of the Texas Penal Code, which defines the territorial jurisdiction of the state with regard to criminal prosecutions,[92] precludes jurisdiction over the alleged theft since no element of the theft took place in Texas. Whether or not the defendants' argument is correct overlooks the basic issue: SCC brought the civil theft claim under chapter 134 of the Civil Practice and Remedies Code, which creates the cause of action, and not the Penal Code. Section 134.002 (2) simply incorporates section 31.03 of the Penal Code to define the term theft. The plain language of section 134 provides that suit may be brought in the county where the theft occurred or

---

[92] Id. § 1.04.

in the county where the defendant resides.[93] It does not require that the state have jurisdiction under section 1.04 of the Penal Code to prosecute the theft as a crime. Thus, Seneca and Route 28's argument that Texas does not have jurisdiction over the alleged theft under section 1.04 of the Penal Code is irrelevant.

Defendants also argue that they have not appropriated any identifiable property within the meaning of chapter 31 of the Penal Code. Defendants point to two Texas cases where the thief was not deemed to have committed theft until they actually received the money. In *Coats v. State* the Court of Criminal Appeals held that for purposes of section 31.03 of the Penal Code a non-possessory interest in money is possible; meaning a theft of money may occur where a thief transfers money from one bank account to another but does not actually withdraw the funds as cash after they are transferred.[94] The theft is "complete upon the crediting of the transfer to [thief's] account, even though the [thief] was not in possession of the cash money."[95] SCC also points this out in its Reply Brief on page 21, footnote 74. However, as with SCC's conversion claim, the fact that no funds have been credited into any party's account makes it impossible for the defendants to bring about even a non-possessory interest in the 2009 payment. SCC has not directed this Court to any case law where Texas courts have permitted the state to charge a party with theft when the defendant has merely asserted a right to receive funds in the future but has no interest, non-possessory or otherwise, in those funds. Therefore, SCC has not met its burden to establish each element of its civil theft claim as a matter of law and summary judgment is inappropriate and is hereby **DENIED.**

---

[93] Civ. Prac. & Rem. Code § 134.004.

[94] Coats v. State, 712 S.W.2d 520, 523 (Tex. Crim. App. 1986); *see also* Bailey v. State, 885 S.W.2d 193, 199 (Tex. App.—Dallas 1994, writ ref'd).

[95] Coats, 712 S.W.2d at 523.

**D.      Dismissal of Counterclaims & Affirmative Defenses**

*1.      Seneca and Route 28's Counterclaims for Declaratory Judgment*

Summary judgment in favor of SCC dismissing Seneca and Route 28's counterclaims for declaratory judgment is moot as these claims have been dismissed by this Court in a separate order.[96] Therefore, since SCC's motion is moot, it is hereby **DENIED.**

*2.      Pagan's Counterclaim for Declaratory Judgment*

Pagan's sole counterclaim seeking certification of a class action to void all assignments to SCC that were made allegedly in violation of anti-assignment clause in the original contract has been previously dismissed without prejudice by this Court.[97] SCC's motion is therefore moot and it is hereby **DENIED.**

*3.      Seneca and Route 28's Counterclaims for Slander of Title*

While Seneca and Route 28 asserted counterclaims for slander of title in their original answer, these counterclaims were not reasserted in their amended answer and thus have been abandoned.[98] Moreover, the Court has adopted the United States Magistrate's Report and Recommendation by separate order that addresses in part the slander of title claims.[99] SCC's motion is therefore moot and is hereby **DENIED.**

*4.      Affirmative Defenses*

a.      Effect of Anti-Assignment Provision on SCC's Purchase Agreement

---

[96] *See* Doc. # 237.

[97] *See* Doc. # 166.

[98] *See* Doc. # 208.

[99] *See* Doc. # 237.

It has been established in the Court's analysis above granting SCC's motion with regard to its declaratory relief claims that the anti-assignment provision in the 1995 settlement agreement does not have any effect on the SCC purchase agreement.[100] Therefore, SCC's motion relating to dismissal of all affirmative defenses asserting that the SCC purchase agreement was voided by the anti-assignment clause is moot and is hereby **DENIED.**

### b.       Ownership of the 2009 Payment

Again, it has been established in the Court's analysis above granting SCC's motion for summary judgment with regard to its declaratory relief claims that SCC, and no other party, is entitled to the proceeds of the 2009 payment.[101] SCC's motion relating to dismissal of all affirmative defenses to the contrary is moot and is hereby **DENIED.**

### c.       Jurisdictional Arguments Re: SCC's Civil Theft Claim

While the Court declined to grant summary judgment in favor of SCC on its civil theft claim, the defendants' arguments regarding jurisdiction were shown to be without merit as established in the Court's analysis above.[102] SCC's motion relating to dismissal of all affirmative defenses asserting that Texas does not have jurisdiction or that the Texas Theft Liability Act has no extra-territorial effect is moot and is hereby **DENIED.**

### d.       Extra-Territorial Effect/Jurisdiction and SCC's Chapter 12 Claim

SCC also asserts a fraudulent claim against personal property cause of action against Seneca and Pagan from Chapter 12 of the Texas Civil Practice and Remedies Code. Chapter 12 "forbids the

---

[100] *See* discussion *supra* at 10.

[101] *See* discussion *supra* at 16-17.

[102] *See* discussion *supra* at 24-25.

27

fraudulent use of a document or other record to evidence a lien or claim against real or personal property with the intent to cause another to suffer physical injury, financial injury, mental anguish, or emotional distress."[103] It also authorizes a recovery for damages by a party harmed by a fraudulent claim.[104] Section 12.003 (a) of chapter 12 delineates who may be a proper plaintiff in a chapter 12 cause of action and section 12.004 provides venue for situations where the claim involves a document recorded in Texas or real property located in Texas.[105]

Seneca asserts as an affirmative defense that chapter 12 has no "extra-territorial effect" and does not apply to "conduct that occurred outside the State of Texas."[106] SCC on the other hand seeks dismissal of this affirmative defense on summary judgment arguing that there is no requirement in chapter 12 that the fraudulent lien, claim, or interest be filed in Texas. When arguing that chapter 12 has no "extra-territorial effect" and does not apply to "conduct that occurred outside the State of Texas" Seneca is actually asserting that section 12.004 limits claims under chapter 12 to only those involving a document recorded in Texas or real property located in the state. Thus, Seneca argues that since none of the conduct relating to the allegedly fraudulent document in this case took place in Texas because no documents were recorded in Texas then SCC's chapter 12 claim must fail as a matter of law.

Chapter 12 does not contain any provisions stating that it applies only to actions concerning documents recorded in Texas or real property located in Texas. Moreover, the limited case law

---

[103] Girdner v. Rose, 213 S.W.3d 438, 444 (Tex. App.—Eastland 2006, no pet.).

[104] Id. at 444-45.

[105] Tex. Civ. Prac. & Rem. Code Ann. §§ 12.003 (a), 12.004 Westlaw current through 2009 R.S.).

[106] Doc. # 164 at 27-28.

concerning chapter 12 does not in any way state or imply that chapter 12 should be so narrowly construed.[107] As a last resort Seneca argues that "at the very least a genuine issue of material fact exists" with regard to the extra-territorial effect of chapter 12 but Seneca does not point to any evidence of facts indicating such an issue.[108] Rather the Court is presented with a question of law as to whether section 12.004 limits chapter 12 claims to only those for which venue is provided for in section 12.004. As discussed above, the plain language of the statute does not provide any such limitation. Therefore since Seneca has failed to raise any fact issues, SCC has carried its burden and summary judgment dismissing Seneca and Pagan's affirmative defense asserting that chapter 12 has no extra-territorial effect is appropriate and should be and is hereby **GRANTED.**

<u>e.</u>   <u>Effect of SSPA on SCC's Purchase Agreement</u>

SCC also seeks summary judgment dismissing any affirmative defenses asserting that the SCC purchase agreement is not legal because it was not approved under SSPA legislation. The Court addressed this question in its analysis above granting SCC's motion for summary judgment with regard to its declaratory relief claims and found that neither the New York nor Florida SSPA have any effect whatsoever on the SCC purchase agreement. SCC's motion for summary judgment as it relates to dismissal of all affirmative defenses to the contrary is therefore moot and is hereby **DENIED**.

---

[107] *See* Aland v. Martin, 271 S.W.3d 424 (Tex. App.—Dallas 2008, no pet. h.); Preston Gate, L.P. v. Bukaty, 248 S.W.3d 892, 896-97 (Tex. App.—Dallas 2008, no pet.); Casstevens v. Smith, 269 S.W.3d 222, 233-34 (Tex. App.—Texarkana 2008, pet. denied); Girdner, 213 S.W.3d at 444-47; Taylor Elec. Servs. v. Armstrong Elec. Supply Co., 167 S.W.3d 522, 529-32 (Tex. App.—Fort Worth 2005, no pet.); Centurion Planning Corp. v. Seabrook Venture II, 176 S.W.3d 498, 503-06 (Tex. App.—Houston [1st Dist.] 2004, no pet.); Young v. Neatherlin, 102 S.W.3d 415, 421-22 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

[108] Doc. # 164 at 28.

Therefore, SCC's motion for partial summary judgment is hereby **GRANTED** in part and **DENIED** in part.

IV.     **Plaintiff SCC's Motion for Leave to File Supplement Appendix to Evidence in Support of SCC's Motion for Partial Summary Judgment**.

SCC's motion for leave to file a supplemental appendix to its evidence in support of its partial summary judgment motion is moot since SCC's motion for partial summary judgment has been granted in part and denied in part. Therefore, since SCC's motion for leave to supplement is moot, and it should be and is hereby **DENIED.**

V.      **Plaintiff SCC's Objections to, and Motion to Strike Seneca and Route 28's Evidence In Support of Their Response to SCC's Motion for Partial Summary Judgment.**

As the Court has granted in part and denied in part SCC's underlying motion for partial summary judgment without reference to the disputed evidence, SCC's objections and motion to strike is moot. Therefore, since SCC's objections and motion to strike is moot it is hereby **DENIED.**

VI.     **Defendants Seneca and Route 28's Amended Motion for Summary Judgment.**

A.      **Declaratory Relief Recognizing Validity of Seneca/Route 28's Claim to 2009 Payment.**

Per this Court's order of July 24, 2009 (Doc. # 237) Seneca and Route 28's counterclaim for declaratory relief recognizing the validity of their claim to the 2009 payment was dismissed. Seneca and Route 28's motion seeking summary judgment in their favor on their declaratory relief claim is therefore moot and is hereby **DENIED.**

B.      **SCC's Tortious Interference Claim.**

Seneca and Route 28 seek summary judgment in their favor with regard to plaintiff SCC's tortious interference with contract claim against them. To recover under Texas law for tortious interference with a contract the plaintiff must show (1) that a contract subject to interference exists;

30

(2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused the plaintiff damages; and, (4) that the actual damages or loss occurred.[109] The first element requires a valid contract, a void contract cannot serve as the basis for a tortious interference claim.[110]

Seneca and Route 28's sole argument in favor of summary judgment against SCC on its tortious interference claim is that the SCC purchase agreement was a void contract, presumably because it was allegedly executed in violation of the anti-assignment provision in the 1995 settlement agreement. However, as explained above the SCC agreement is valid and enforceable.[111] Therefore, Seneca and Route 28 have failed to meet their burden and summary judgment in favor of Seneca and Route 28 on SCC's tortious interference claim is inappropriate and is hereby **DENIED.**

### C.    SCC's Civil Theft Claim.

Seneca and Route 28 also seek summary judgment in their favor with regard to plaintiff SCC's civil theft claim. On the basis of this Court's reasoning above, pertaining to SCC's failure to present evidence that actual funds belonging to SCC have been deposited into the defendant's account,[112] summary judgment in favor of Seneca with regard to SCC's civil theft claim is appropriate and is hereby **GRANTED.**

---

[109] ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997).

[110] Juliette Fowler Homes, Inc. v. Welch Assocs., Inc., 793 S.W.2d 660, 664 (Tex. 1990).

[111] *See* discussion *supra* at 9-16.

[112] In the absence of such facts SCC also failed to direct this Court to any case law where Texas courts have allowed a party to be charged with theft after merely asserting a right to receive funds in the future but have no interest, non-possessory or otherwise, in those funds. *See* discussion *supra* Part IV(C).

31

**D.     SCC's Conspiracy Claim.**

Seneca and Route 28 seek summary judgment in their favor against SCC's conspiracy to commit theft claim. In order to recover for civil conspiracy under Texas law a party must establish that two or more persons had a meeting of the minds on an object or course of action and have committed one or more unlawful overt acts thereby proximately causing damages to the plaintiff.[113] Seneca and Route 28 challenge only one element, the alleged unlawful, overt act, or SCC's civil theft claim**.**

The only unlawful, overt act SCC alleges to satisfy the fourth element of their civil conspiracy claim is Seneca's alleged theft of the 2009 payment. This Court has granted Seneca's request for summary judgment on SCC's civil theft claim.[114] SCC does not allege any other unlawful overt act to satisfy that element of its civil conspiracy claim. Therefore, SCC's civil conspiracy claim must fail as a matter of law. Summary judgment in favor of Seneca with regard to SCC's civil conspiracy claim is thus appropriate and is hereby **GRANTED.**

**E.     SCC's Conversion Claim.**

Seneca and Route 28 seek summary judgment in their favor with regard to SCC's conversion claim. On the basis of this Court's reasoning above[115] summary judgment in favor of Seneca with regard to SCC's conversion claim is appropriate and is hereby **GRANTED.**

**F.     SCC's Chapter 12 Claim**

---

[113] Tri v. J.T.T., 162 S.W.3d 552, 556 (Tex. 2005).

[114] *See* discussion *supra* at 22-25 and 31.

[115] *See* discussion *supra* at 17-22.

Seneca seeks summary judgment in its favor with regard to SCC's chapter 12 claim. Seneca asserts the same arguments in favor of its summary judgment request that it asserted in opposition to SCC's summary judgment request seeking dismissal of Seneca's affirmative defense against the chapter 12 claim. The Court granted SCC's request insofar as it related to dismissal of Seneca's affirmative defense relating to chapter 12 and the reasoning therefor applies equally.[116] Summary judgment in favor of Seneca on SCC's chapter 12 claim is therefore inappropriate and is hereby **DENIED.**

Seneca and Route 28's amended motion for summary judgment is thus hereby **GRANTED** in part and **DENIED** in part.

**VII.    Plaintiff SCC's Motion for Leave to File Supplement Appendix to Evidence in Support of SCC's Opposition to Seneca and Route 28's Amended Motion for Summary Judgment.**

SCC's motion for leave to file a supplemental appendix to its evidence in support of its opposition to Seneca and Route 28's amended motion for summary judgment is moot since Seneca and Route 28's amended motion for summary judgment has been granted in part and denied in part. Therefore, since SCC's motion for leave to supplement is moot it is hereby **DENIED.**

**VIII.   Plaintiff SCC's Objections to, and Motion to Strike Seneca and Route 28's Evidence In Support of Their Amended Motion for Summary Judgment.**

As the Court has granted in part and denied in part Seneca and Route 28's underlying amended motion for summary judgment without reference to the disputed evidence SCC's objections and motion to strike is moot. Therefore, since SCC's objections and motion to strike is moot it is hereby **DENIED.**

---

[116] *See* discussion *supra* at 27-29.

33

**IX.    Plaintiff SCC's Motion for Leave to File Second Amended Complaint.**

Plaintiff SCC seeks leave to file a second amended complaint adding defendant Route 28 as a party to the causes of action it has previously asserted against Seneca. SCC's request for leave was filed on November 10, 2008, a week after SCC filed its Motion for Partial Summary Judgment and nearly six months after the May 27, 2008 deadline to amend pleadings per this Court's Scheduling Order. SCC argues that leave should be granted because it was not until September and October 2008 after certain depositions and document production that SCC discovered the specific facts about the relationship between Seneca and Route 28. SCC argues that the fact that its request comes long after the pleading deadline should be overlooked because until the filing of the motion for leave SCC did not have sufficient information about Route 28's involvement in the counts or its relationship to Seneca.

Seneca and Route 28 oppose SCC's motion for leave to amend because it was SCC's own "delay and lack of diligence" in conducting discovery which led to the delay in SCC discovering the relationship between Seneca and Route 28. Moreover Seneca and Route 28 assert that granting SCC's motion for leave to amend will result in undue prejudice to Route 28 since SCC's request was filed more than a month after the deadline for conducting discovery. Route 28 also claims that granting SCC's motion will result in undue delay in the resolution of this case. Lastly, Route 28 argues that leave to amend should be denied as being futile because "SCC's claims against Route 28 are without merit." In its reply brief SCC explains that its alleged "delay and lack of diligence" in conducting discovery was actually a result of Seneca and Route 28's "stonewalling" with regard to setting depositions and producing relevant documents during discovery.

Rule 16(b) of the Federal Rules of Civil Procedure governs amendment of pleadings after a scheduling order deadline has expired.[117] "Rule 16(b) provides that a scheduling order 'shall not be modified except upon a showing of good cause and by leave of the district judge.'"[118] The Fifth Circuit applies a four-part test to determine whether or not a district Court's denial of an untimely motion to amend pleadings is an abuse of discretion.[119] The Court should consider: (1) the filing party's explanation for its failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure any prejudice.[120]

On March 27, 2008 this Court entered a Scheduling Order that included a deadline to amend pleadings of May 27, 2008 and a discovery deadline of October 3, 2008. Moreover, SCC filed a Motion for Partial Summary Judgment on November 3, 2008 and filed its last reply on December 11, 2008. Also, since SCC has filed its motion for leave to amend Seneca and Route 28 have filed their own amended motion for summary judgment on November 14, 2008. SCC's motion for leave was filed almost 6 months after the scheduling order's deadline to amend pleadings and a month after the discovery deadline.

The Court has granted summary judgment in favor of defendant Seneca on SCC's civil theft, conspiracy, and conversion claims and therefore SCC's motion for leave to add Route 28 to those claims is moot and must be and is hereby **DENIED.** However, the Court finds that SCC has shown

---

[117] S & W Enters., L.L.C. v. Southtrust Bank of Alabama, 315 F.3d 533, 536 (5th Cir., 2003).

[118] Id. at n.4.

[119] Id.

[120] Id.

good cause for its failure to amend by the deadline of May 27, 2008 and will grant leave for SCC

to add Route 28 to it's remaining claims of tortious interference with contract and chapter 12.

Therefore SCC's motion for leave to amend is hereby **GRANTED** as limited by this paragraph and

SCC is directed to file its amended complaint joining Route 28 on or before **July 31, 2009** and

defendants are directed to file their respective amended answers on or before **August 7, 2009**.

SO ORDERED ON THIS 24th day of July, 2009.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

36